IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RAYMAT MATERIALS, INC., a
California corporation,

    Plaintiff,

v.

A&C CATALYSTS, INC., a New Jersey
corporation,

    Defendant.

No. C 13-00567 WHA

**ORDER DENYING
MOTION TO DISMISS**

## INTRODUCTION

In this action for breach of contract and declaratory judgment, defendant moves to dismiss. For the reasons stated below, the motion to dismiss is **DENIED.**

## STATEMENT

The main question is whether the proposed pleading adequately alleges breach of contract of an exclusive-dealing arrangement. Plaintiff Raymat Materials, Inc. is a chemical manufacturer and supplier. Defendant A&C Catalysts, Inc. is a manufacturer and supplier of resins and curing agents. The first amended complaint alleges that A&C contacted Raymat about entering into an exclusive-dealing agreement whereby Raymat would sell its L-lysine powder only through A&C. The first amended complaint further alleges that A&C promised to sell at least 24 metric tons of Raymat's L-lysine powder every year. In exchange, Raymat allegedly agreed orally to the exclusive-dealing arrangement (First Amd. Compl. ¶ 10).

1   A&C then requested a written contract.  Raymat sent A&C an internet template
2   entitled "Exclusive Supply Agreement."  A&C added a confidentiality paragraph and a
3   non-circumvention paragraph and signed.  Raymat signed approximately one week later.
4   The three-page contract was appended to the first amended complaint.  The first two
5   pages of the contract contained the amended exclusive-dealing arrangement, which both parties
6   signed on the bottom of page two.  The third page was a brief appendix with a table that stated:

| | |
|---|---|
| Products: | 4/7/2011 |
| L-Lysine | $ 42.40/kg |
| Purchase Quantities minimums; | 1 MT |
| Annual Volume Commitment | 24 MT |

Page three was dated prior to any signing of the second page.  Neither party disputes that the annual commitment page is part of the contract.

The first amended complaint alleges that Raymat fulfilled its obligations under the agreement for two years.  It further alleges that A&C breached because it "only met a small fraction of the 24 metric ton commitment" and did not use reasonable efforts to sell Raymat's products.

The agreement's termination clause stipulated that either party could terminate the agreement "with cause, by giving written notice to the other party not less than sixty (90) [sic] days prior to the effective date of such termination" (*id.* at 7).  Raymat gave A&C written notice in December 2012 that A&C had 60 days to cure its first-year deficiency pursuant to the agreement's termination clause.  In January 2013 A&C responded that (1) Raymat had no cause to terminate the agreement because A&C had not breached, (2) A&C considered Raymat's notice of termination "null and void," and (3) the agreement continued to govern the parties (*id.* at ¶ 19).  A&C's response further accused Raymat of meeting directly with customers in violation of the confidentiality and non-circumvention clauses (*id.* at ¶ 20).

**ANALYSIS**

A&C now moves to dismiss Raymat's amended complaint for failure to state a claim for breach of contract, failure to state a claim for declaratory judgment, and lack of ripeness.

**1.   BREACH OF CONTRACT.**

To state a claim for breach of contract, a plaintiff must plead sufficient facts to establish: (1) the existence of a contract; (2) the plaintiff's performance under the contract; (3) that the defendant breached the contract; and (4) the breach resulted in damage to the plaintiff. *Walsh v. W. Valley Mission Cmty. Coll. Distr.* (1998) 66 Cal. App. 4th 1532, 1545.

The motion argues that Raymat failed to state a claim for breach of contract because it failed to meet California fact pleading requirements. It cites a footnote in *Worley v. Avanquest North Am., Inc.,* 2013 WL 450388, at *3 n. 5 (N.D. Cal. Feb. 5, 2013) (Judge Susan Illston), for the proposition that "U.S. District Courts in California have recognized this standard (California state law fact pleading requirements for stating a claim for breach of contract) as meeting the pleading requirements of the Federal Rules of Civil Procedure" (Dkt. No. 19 at 2). Movant misreads this decision. The footnote cited merely repeated the California standard for stating a claim for breach of contract. Nowhere did *Worley* "recognize" any fact pleading requirement.

Although the claim for relief is based on state law, federal procedural rules govern the pleading standard. A pleading must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face.

The first amended complaint has plausibly pleaded breach of contract. It has pleaded the existence of a contract and appended the written contract. It alleges that Raymat performed its contractual duties and that A&C breached by selling only a fraction of its 24 metric ton commitment. It finally alleges that Raymat has suffered significant economic damage in an amount greater than $500,000 in lost profits and other damages due to A&C's breach (First Amd. Compl. ¶¶ 13–16). This order holds that Raymat's first amended complaint satisfies the federal pleading standard.

A&C argues in its motion to dismiss that the annual sales commitment was not a commitment on its part to *sell* 24 metric tons of powder but rather a commitment by Raymat to *provide* A&C with up to 24 metric tons of powder (Dkt. No. 19 at 4).  From experience, the undersigned judge realizes that the normal quid pro quo of an exclusive-dealing contract is the buyer's promise to take a minimum quantity — otherwise the exclusivity merely ties the hands of the manufacturer for no good reason.  Contrary to Raymat, however, the appendix to the contract seems to say that the minimum commitment by A&C was one metric ton and that Raymat guaranteed that it would, if ordered by A&C, supply up to 24 metric tons per year, all at $42.40 per kilogram.  The document is so sketchy, however, that extrinsic evidence will be necessary to nail down the actual meaning.  In this regard, the course of dealing will be of some potential relevance as will be all communications made by parties leading up to the execution of the contract.  This cannot be decided on a motion to dismiss.

A&C also argues that even if Raymat's interpretation of the annual commitment is true, this creates promise without consideration.  This argument is rejected.  The nature of an exclusive-dealing contract is that in exchange for exclusivity the other party agrees to a minimum commitment.

### 2. DECLARATORY JUDGMENT.

A&C argues that Raymat's breach of contract claim is not ripe for review because Raymat filed this suit before its termination letter took effect.  This misunderstands Raymat's breach-of-contract claim.  The first amended complaint alleges A&C breached the contract by not meeting its annual commitment for two years.  The contract's 60-day cancellation provision determined proper timing for one party to terminate the agreement, not ripeness for filing a legal action.

Raymat also seeks a declaration that its termination letter was effective.  Contrary to A&C, Raymat has a legitimate and ripe need to learn whether its obligations under contract have ended.  Accordingly, A&C's motion to dismiss is **DENIED**.

4

**CONCLUSION**

For the reasons stated above, defendant's motion to dismiss is **DENIED**. The answer is due by **NOON ON JULY 22, 2013**.

**IT IS SO ORDERED.**

Dated: July 12, 2013.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE