**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RAYMAT MATERIALS, INC., a
California corporation,

        Plaintiff,

    v.

A&C CATALYSTS, INC., a New Jersey
corporation,

        Defendant.

                      /

A&C CATALYSTS, INC., a New Jersey
corporation,

        Third-Party Plaintiff,

    v.

PROTAMEEN CHEMICALS, INC., a New
Jersey corporation,

        Third-Party Defendant.

                      /

No. C 13-00567 WHA

**ORDER DENYING THIRD-PARTY DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In this action for intentional interference with contractual relations and unfair competition, third-party defendant moves to dismiss or, in the alternative, for summary judgment. As defendant has properly pled a claim for intentional interference with contractual relations and unfair competition, and because material issues of fact remain, third-party defendant's motion is **DENIED**.

**STATEMENT**

Plaintiff Raymat Materials, Inc. filed a breach of contract action against A&C Catalysts, Inc. in February 2013 (Dkt. No. 1).  A&C then filed this third-party complaint against Protameen Chemicals, Inc. on July 22 alleging intentional interference with contractual relations and unfair competition (Dkt. No. 26).

Plaintiff Raymat is a chemical manufacturer and supplier.  Defendant A&C is a manufacturer and supplier of resins and curing agents.  In 2008, A&C approached Raymat to manufacture and produce N-Lauroyl-Llysine, a chemical powder derived from the amino acid Llysine ("lysine").  Thereafter, Raymat produced lysine for A&C at its manufacturing facility located in China (Third-Party Compl. ¶ 48–52).

In March 2009, A&C received its first-ever shipment of lysine produced by Raymat. Multiple orders were subsequently placed and in November 2009, A&C and Raymat entered into a confidential disclosure agreement, binding the parties from disclosing or improperly using confidential information (*id*. at ¶ 53).

At the time, the lysine business was growing and third-party defendant Protameen was one of A&C's largest lysine customers.  In July 2010, Protameen informed A&C that it no longer wished to purchase lysine.  According to the complaint, A&C later discovered that Raymat, using A&C's confidential business and marketing information, approached Protameen to sell lysine directly to Protameen, in violation of its contractual relationship.  In September 2010, Raymat delivered its first order of lysine to Protameen, however, it was deemed defective and unusable by Protameen.  As a consequence, Protameen's customers rejected the shipments and refrained from making future purchases, thus damaging the overall market for lysine (*id*. at ¶ 54–57).

In January 2011, Raymat approached A&C about repairing their business relationship and reestablishing the lysine market.  In April 2011, Raymat and A&C entered into an Exclusive Supply Agreement ("agreement"), making A&C Raymat's exclusive distributor of lysine in the United States and other territories (*id*. at Exh. A).  Section 8.6 of the agreement contained a non-circumvention clause that precluded Raymat from seeking or consummating any transaction

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  for lysine in the United States without the written consent of A&C. In addition, the agreement

2  contained an annual volume commitment of lysine that A&C had to purchase from Raymat.

3  Upon consummation of the agreement, A&C resumed purchasing lysine from Raymat (*ibid.*).

4          On December 5, 2012, while the agreement was still in effect, Raymat officers personally

5  met with Protameen personnel to discuss once again selling lysine directly to Protameen and

6  circumventing A&C. The pleading alleges that Protameen subsequently cancelled their January

7  and February purchase orders with A&C as a result of their meeting with Raymat

8  (*id*. at ¶ 59–60).

9          On December 31, Raymat sent notice to A&C that it had failed to meet the annual

10  purchase requirement of lysine laid out in the agreement. With Protameen no longer purchasing

11  lysine from A&C, it became more difficult for A&C to meet the minimum purchase requirement.

12  The notice stated that A&C had 60 days to purchase the outstanding quantity of lysine. A&C

13  alleges that as a direct result of Protameen's interference with A&C and Raymat's contractual

14  obligations, A&C could not cure the agreement by purchasing the quantities of lysine demanded

15  by Raymat (*id*. at ¶ 61–62).

16          A&C denies that it failed to meet the minimum purchase requirement and claims that

17  Raymat breached the agreement through circumvention. On January 31, 2013, A&C sent

18  Protameen a cease-and-desist letter demanding it refrain from contacting and consummating any

19  transactions with Raymat for lysine.

20          According to the complaint, Raymat did not send further communications to A&C

21  following its notice to cure, and did not provide A&C with a notice of termination of the

22  agreement. Instead, within the 60-day cure period, Raymat initiated the present lawsuit

23  (*id*. at ¶ 63–64).

24          On July 22, A&C filed its third-party complaint against Protameen for intentional

25  interference with contractual relations and unfair competition (Dkt. No. 26). On October 1,

26  Protameen filed this motion to dismiss or, in the alternative, a motion for summary judgment

27  (Dkt. No. 33). A&C's response was due September 27, but was untimely. For good cause

28

3

**United States District Court**
For the Northern District of California

1   shown, the response was received and accepted on October 1 (Dkt. No. 36).  Protameen filed its

2   reply on October 8 (Dkt. No. 38).  A hearing was then held.

3                                                    **ANALYSIS**

4        **1.        INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS.**

5        To survive a motion to dismiss, a complaint must contain sufficient factual matter,

6   accepted as true, to state a claim for relief that is plausible on its face.  *Ashcroft v. Iqbal*,

7   556 U.S. 662, 663 (2009).

8        California courts have long held that a stranger to a contract may be liable in tort for

9   intentionally interfering with the performance of the contract.  *See Imperial Ice v. Rossier*,

10  18 Cal.2d 33, 39 (1941).  The elements which a plaintiff must plead to state a claim for

11  intentional interference with contractual relations are:  (1) a valid contract between plaintiff and

12  a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts

13  designed to induce a breach or disruption of the contractual relationship; (4) actual breach or

14  disruption of the contractual relationship; and (5) resulting damage.  *See Pacific Gas & Electric*

15  *Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126 (1990).  Even where a contract has an express

16  termination provision, and the provision is exercised, the parties to the contract are still protected

17  against the unjustified interference by third parties.  *Id*. at 1128.  Furthermore, the California

18  Supreme Court has recognized that a plaintiff need not allege an actual or inevitable breach of

19  the contract in order to state a claim for disruption of contractual relations; mere interference

20  with the plaintiff's performance may give rise to a claim for interference with contractual

21  relations if plaintiff's performance is made more costly or burdensome.  *Id*. at 1129.  Unlike the

22  tort of inducing breach of contract, which requires proof of a breach, the tort of interference of

23  contractual relations only requires proof of interference.  *See Shamblin v. Berge*, 166 Cal. App.

24  3d 118, 122–23 (1985).

25       Protameen's motion to dismiss focuses on the third element of the intentional

26  interference claim:  whether Protameen acted intentionally to induce a breach or disruption of the

27  contractual relationship (Protameen Br. 7).  Protameen states that "the only facts that A&C has

28  alleged on this point are that Raymat solicited [Protameen] to buy [lysine] and that [Protameen]

**United States District Court**
For the Northern District of California

1  had a meeting with Raymat in December 2012" (*ibid.*).* According to Protameen, the complaint

2  fails to allege that Protameen did anything affirmative that was "designed to induce a breach or

3  disruption of the contractual relationship" (*ibid*.).  Protameen argues that it cannot be held liable

4  for intentional interference with a contractual relations when it was Raymat that solicited

5  Protameen to purchase lysine, not the other way around (*id*. at 8).

6        The third-party complaint states:

7            . . . Raymat officers personally met with Protameen personnel on
             or about December 5, 2012 to . . . sell Lysine at more favorable
8            terms.  Protameen was fully knowledgeable of the Agreement
             between A&C and Raymat.  Soon thereafter, Protameen cancelled
9            their January and February purchase orders with A&C.

10                              *            *            *

11           . . . Protameen had willingly engaged Raymat despite its
             knowledge of the illegality of that engagement.  Therefore, A&C
12           had lost Protameen as a customer.  Protameen was the largest
             customer in the Lysine market, a fact that was known to both
13           Raymat and Protameen.  Therefore, as a result of Raymat's breach
             of the Agreement's non-circumvention clause and Protameen's
14           interference with the parties' contractual obligations, A&C could
             not have possibly 'cured' by purchasing such large quantities as
15           demanded by Raymat.

16                              *            *            *

17           A&C and Raymat have a valid existing contract for the exclusive
             sale of Lysine in the United States.  Protameen at all relevant times
18           knew of the existence of this contract.  Protameen intentional[ly]
             and tortiously interfered with the Agreement by consenting to
19           meetings with Raymat and engaging in the negotiations for the
             purchase of Lysine from Raymat, even knowing that the
20           Agreement designated A&C as the exclusive supplier of Lysine.
             Protameen, not being a party to the Agreement, and without
21           justification or excuse, intentionally and tortiously interfered with
             A&C's ability to do business under the Agreement.  Protameen's
22           conduct prevented A&C's performance under the Agreement or
             made performance more expensive or difficult.

23
   (A&C Compl. ¶¶ 59, 62, 77).  The facts alleged in the third-party complaint, which for the
24
   purposes of a motion to dismiss must be regarded as true, allege that Protameen intentionally
25

26       * Protameen's motion to dismiss confuses the names of the parties.  The above quoted passage states, "A&C
   has not properly pleaded the third element, *i.e.*, 'defendant's intentional acts designed to induce a breach or disruption of
27 the contractual relationship.'  Other than formulaic and conclusory statements, the only facts that A&C has alleged on
   this point are that Raymat solicited A&C to buy lauroyl lysine and that A&C had a meeting with Raymat in December
28 2012" (Protameen Br. 7).

                                            5

1  interfered with a contractual relationship, and that such interference resulted in substantial

2  damage to A&C.  The complaint alleges that Protameen, with full knowledge of the

3  non-circumvention agreement, engaged in negotiations intended to interfere with the contract that

4  existed between Raymat and A&C.  Furthermore, it alleges that Protameen cancelled its January

5  and February purchase orders of lysine in order to make it more difficult for A&C to perform

6  under its agreement with Raymat, thereby allowing Protameen to buy from Raymat directly.

7  Accordingly, A&C has met its pleading burden under *Iqbal*.

8          As a corollary to this argument, Protameen asserts that A&C cannot make out a claim for

9  inducement because it was Raymat that called the meeting with Protameen and not the other way

10  around.  It is beyond the pale to argue that a non-organizing attendee at a meeting cannot be

11  guilty of intentional interference with contractual relations.  To follow such logic would mean

12  that nothing Protameen's officials said, or agreed to, at the meeting with Raymat was of any

13  consequence.  While Protameen fails to cite any authority for its proposition, the only authority

14  on this point is contrary.

15          For example, where plaintiffs real estate brokers alleged that home owner met with a

16  prospective buyer and conspired to deprive plaintiffs of their commission under the contract,

17  the state court of appeal denied a motion for judgment on the pleadings.  *Allen v. Powell*,

18  248 Cal. App.2d 502, 512 (1967).  The court held, "[o]f course, plaintiffs must prove that Lee

19  Bros. actively induced the original owners to breach their contract with plaintiffs.  If it developed

20  in the proof that Lee Bros. merely paid the price requested by the original owners and that the

21  breach of the commission contract resulted from the unilateral acts of the original owners, then

22  Lee Bros. would not be liable for interferences."  *Id*. at 506.  Similarly, if Protameen can show

23  that it either did not interfere or that the interference resulted from the unilateral acts of Raymat,

24  then it would not be liable.  The motion to dismiss, however, cannot be granted merely because

25  Protameen was not the organizer of the meeting.  Such a theory overlooks the fact that Raymat

26  and Protameen allegedly joined together with an intent to deprive A&C of the benefits of the

27  agreement.  It is plausible to conclude, as alleged by A&C, that Protameen actively withdrew its

28  orders from A&C — in full knowledge that A&C would not be able to perform under its

United States District Court
For the Northern District of California

6

1    agreement with Raymat — in order to secure lysine directly from Raymat at a lower price.

2    The complaint sufficiently alleges intentional interference with contractual relations.

3         As for Protameen's motion for summary judgment, this order finds that it would be

4    premature to grant summary judgment on this issue when A&C only filed its third-party

5    complaint in July, and discovery is ongoing until March 28, 2014 (Dkt. No. 16).  The details of

6    Protameen's meeting with Raymat are not first hand knowledge to A&C, and A&C should be

7    afforded due opportunity to obtain the evidence necessary to litigate this action.  Should A&C fail

8    to provide sufficient evidence such that a reasonable jury would have no evidentiary basis to find

9    in its favor for this issue, summary judgment may be appropriate, but not at this point.

10   Accordingly, the motion for summary judgment of the intentional interference claim is **DENIED**.

11            **2.      UNFAIR COMPETITION CLAIM.**

12        Protameen also moves to dismiss or, in the alternative, for summary judgment of A&C's

13   unfair competition claim.  A&C's claim against Protameen for unfair competition is based on

14   A&C's claim against Protameen for intentional interference with contractual relations.

15        Section 17200 of the California Business and Professions Code states, "unfair competition

16   shall mean and include any unlawful, unfair or fraudulent business act or practice."  The Code

17   was once applicable only to unlawful business practices, requiring proof of a pattern or course of

18   conduct, not just a single transaction.  It was amended in 1992, however, to state that it applies to

19   any unlawful "act or practice," permitting invocation of the Code based on a single instance of

20   unfair conduct.  *See Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 653 (1996).

21        A&C's unfair competition claim against Protameen is based on the same conduct alleged

22   under its claim for intentional interference with contractual relations.  Since A&C has adequately

23   pled a claim for the latter, A&C has also adequately pled a claim for unfair competition.

24   Consequently, Protameen's motion to dismiss is **DENIED**.

25

26

27

28

United States District Court
For the Northern District of California

**CONCLUSION**

For the reasons stated above, third-party defendant's motion is **DENIED**. Third-party defendant has **FOURTEEN CALENDAR DAYS** to submit an answer to the third-party complaint.

**IT IS SO ORDERED.**

Dated:  October 31, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8