IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMAT MATERIALS, INC., a California corporation,<br><br>  Plaintiff,<br><br>  v.<br><br>A&C CATALYSTS, INC., a New Jersey corporation,<br><br>  Defendant and Third-Party Plaintiff,<br><br>  v.<br><br>PROTAMEEN CHEMICALS, INC., a New Jersey corporation,<br><br>  Third-Party Defendant. | No. C 13-00567 WHA<br><br>**ORDER DENYING MOTION TO COMPEL, ISSUING COURT-ORDERED INTERROGATORIES, VACATING HEARING, AND DENYING MOTION TO EXTEND SCHEDULE OR SERVE FURTHER DISCOVERY REQUESTS** |

Counsel for both sides have misbehaved. Over the span of four weeks, the parties have flooded the docket with no less than six verbose and voluminous motions. This action has degenerated into he-said-she-said accusations, finger-pointing, allegations of "lies to the Court," and obfuscation of the truth. For the reasons stated herein, the motion to compel the further deposition of third-party defendant Protameen Chemicals, Inc. is **DENIED**. Instead, this order propounds **INTERROGATORIES** to be answered by Protameen Chemicals, Inc. by **NOON ON APRIL 29**. The hearing on May 1 is **VACATED** in light of the hearing held on April 22. The motion to extend the case schedule or serve further discovery requests is **DENIED**.

**STATEMENT**

In February 2013, plaintiff Raymat Materials, Inc. filed a complaint against defendant A&C Catalysts, Inc. alleging breach of an exclusive supply agreement and declaratory relief relating to the alleged termination of the agreement (Dkt. No. 1, 15).

In July 2013, defendant A&C Catalysts, Inc. filed an answer and third-party complaint against Raymat and third-party defendant Protameen Chemicals, Inc. alleging breach of contract, intentional interference with contractual relations, and unfair competition (Dkt. No. 26).

Fact discovery closed on March 28, 2014. Trial is scheduled for June 30, 2014.

\*           \*           \*

In March and April 2014, the parties filed the following motions: (1) Raymat's motion for leave to file a second amended complaint and to modify the scheduling order; (2) Raymat's motion for summary judgment on all claims; (3) Protameen's motion for summary judgment on all claims; (4) A&C Catalysts' motion to compel the further depositions of Protameen (Emmanuel Balsamides, Sr., Alexis Wade, and Protameen); (5) Raymat's motion for an order finding A&C Catalysts and counsel in civil contempt; and (6) A&C Catalysts' administrative motion to extend fact discovery, enlarge time to file dispositive motions, or to serve untimely discovery requests.

This order addresses A&C Catalysts' motion to compel and administrative motion to extend the schedule or serve untimely discovery requests, following briefing and oral argument (Dkt. Nos. 67, 68, 77). At the hearing, A&C Catalysts also handed up their letter to Raymat, dated April 14, and Raymat handed up an excerpt of the deposition of Lance Tkacs (the director of operations at Protameen). Having considered the record, this order finds as follows.

**ANALYSIS**

1.  **MOTION TO COMPEL.**

The deposition transcripts reveal that counsel for both sides have disregarded the rules. Among their offenses are long speaking objections, witness coaching, improper objections, screaming-and-yelling, and tag-teaming. This is well below the standard of practice in our district.

This order will highlight a few examples. Attorney James Li defended the depositions of Protameen and Attorney Tony Chang asked the questions (for A&C Catalysts):

> Q. You saw your Declaration. You said you got a lower price?
>
> A. I'm assuming, because I was told that the price could be lower. It's a tool. It's a tool.
>
> Q. I'm not referring to business strategies. I'm just referring very narrow, you made a representation?
>
> MR. LI: Let him answer, Counsel.
>
> Q. You made a representation –
>
> MR. CHANG: There's no need to yell.
>
> MR. LI: Do not interrupt my witness. Okay? Please.
>
> MR. CHANG: Mr. Li, there's no need to yell. If he's not answering the question, will ask him. And your yelling is not going to move this deposition along any quicker than it needs to be.
>
> MR. LI: Do not interrupt the witness. I'm telling you do not interrupt. Stop.
>
> MR. CHANG: No need to start again. Don't play your little games with me.
>
> MR. LI: I don't play games.
>
> MR. CHANG: Keep it off the table. Just relax. Relax.
>
>                         \*                        \*                        \*
>
> Q. During that time when you bought Lysine, who were you selling it to?
>
> A. That's private information.
>
> Q. Again, it's information that you're required to give at this deposition.
>
> A. I refuse to give it.
>
> MR. LI: I object.
>
> MR. CHANG: Mr. Li, we're down the same road as yesterday. The customer list is discoverable. We gave our customer list in the deposition and I'm looking for the customers of Lysine that Protameen was selling to.

3

1   MR. LI:   I don't think customer list of Protameen is relevant to this case. Okay. But I'm not instructing him to not answer the question. It's up to him to decide whether he's comfortable.

2

3   MR. CHANG:   That's an understanding, but that's also a copout.

4   A.   It's not a copout. It's a very proprietary -- our customer list is our private list.

5

(Balsamides Sr. Dep. at 41–43, 66–71).

6

7   MR. CHANG:   I want to let the record reflect that the attorney for the witness is communicating with the witness. It's improper.

8   MR. LI:   I'm explaining why it's confusing.

9   MR. CHANG:   You can't communicate with the witness. You know better than me on that. So I don't have to explain that.

10

11   MR. LI:   In the deposition?

MR. CHANG:   Yes, when you are coaching the witness, of course.

12

13   MR. LI:   I'm trying to explain why the --

14   MR. CHANG:   The record is marked accordingly. If you were explaining then it has to be heard by the court reporter.

15

16   MR. LI:   I can tell you what I told her. All right?

MR. CHANG:   Let's move on.

17

(Wade Dep. at 112–14). Attorney Tony Chang defended the depositions of A&C Catalysts and

18

Attorney James Li asked the questions.

19

20   MR. LI:   Just for the record, Mr. Wolfe is reading to himself a document.

21   Q.   Mr. Wolfe, can I took a look at the document you just looked at, the first one?

22

23   MR. CHANG:   I object to that one because that document, if I recall --

24   THE WITNESS:   It's from you.

25   MR. CHANG:   This is confidential documents prepared by his attorneys.

26

27   MR. LI:   He's using them for deposition for testimony and you're refusing --

28   MR. CHANG:   Is he using them? Can we go off the record?

United States District Court
For the Northern District of California

4

> MR. LI: No, I want to keep it on. Let me just make a formal request. I request you to give me a copy of that.
>
> MR. CHANG: I object.
>
> MR. LI: You object? You don't want to give me the copy?
>
> MR. CHANG: I'm objecting to your request to ask for a privileged document.
>
> MR. LI: So you refuse to give me a copy of the document Mr. Wolfe just reviewed?
>
> MR. CHANG: That's correct.

(Wolfe Dep. at 33–34). Neither side should have disregarded the undersigned judge's standing order which stated, *inter alia*: "[s]peaking objections are prohibited" (Dkt. No. 9 at ¶¶ 19, 20).

\*       \*       \*

This order finds that ordering further depositions of Protameen, as requested by A&C Catalysts, would be largely unproductive. Further depositions would only needlessly prolong the case schedule, possibly open up a fishing expedition, and spur further misconduct and motion practice. Counsel for both sides have proved unable to live up to the standards expected and observed in this district. A&C Catalysts' overbroad motion for further depositions on "questions about (1) Protameen's sales of Lauroyl Lysine, (2) Protameen's contracts with third parties for the sale of Lauroyl Lysine, and (3) Protameen's conduct in contract negotiations regarding Lauroyl Lysine" is **DENIED**.

Instead, the main item A&C Catalysts really wants is the name of Protameen's customer, as referred to in an email from Protameen to Raymat in December 2012. A brief timeline explains:

In 2011, Raymat and A&C Catalysts entered into an exclusive supply agreement. As stated at the hearing, Raymat was the supplier and A&C Catalysts was the purchaser. Exhibit A to the agreement stated:

> Products:          4/7/2011
>
> Lysine             $42.40/kg
>
> Purchase Quantities minimums;       1 MT
>
> Annual Volume Commitment            24 MT

5

(Li Reply Decl. Exh. D). MT stands for metric ton. In Raymat's view, A&C Catalysts promised to order 24 metric tons of Lauroyl Lysine a year. According to Raymat, for "the first year of the Exclusive Agreement, [A&C Catalysts] ordered a total of 8.25 tons" and "the second year of the Agreement, from April 7, 2012 to March 31, 2013 (when the agreement was terminated), A&C Catalysts made three orders for a total of 9.9 tons" (Turner Decl. ¶¶ 22, 23). In other words, A&C Catalysts did not order 24 metric tons a year. The complaint alleged that "Raymat noticed [A&C Catalysts] in writing on December 31, 2012 that it would terminate the agreement 'for cause'" (Amd. Compl. ¶ 18).

An email, dated December 3, 2012, from Emmanuel Balsamides, Sr., the chief executive officer of Protameen, to Raymat stated (Wiley Decl. Exh. F) (emphasis added).:

> Are you coming to Protameen Wednesday Morning? We have to talk. Some how John Wolf[e] found out you were coming in and he called. Thru our conversation I found that he gets all his material from you. *One thing I want to impress on you that the new contract with our customer is coming due January 2013. I know our competition wants the contract and they will do anything to get it back.* One main way is lowering the price. So I want you to think about what we should do. John Wolf[e] wanted to raise the price in January but when he came in he said he would hold off till the end of January. *Why do we need a middle man because the price is the issue.* Hope to hear from you soon and see you Wednesday.
>
> Manny Sr.
> Protameen

John Wolfe is the vice president of A&C Catalysts and his signature appears on the exclusive supply agreement with Raymat. A&C Catalysts seeks to learn the name of the unidentified "customer."

Raymat responded:

> Manny Sr.,
>
> I was waiting for confirmation from you and Alexis that you were available to meet Wed. morning. Yes, we can come to Protameen on Wed. morning, around 10:30am or so to meet with you.
>
> *For the contract due in Jan., what is the annual volume the contract is worth?* Please let me know, thank you and see you on Wed.
>
> Jibing

6

During deposition, the Protameen witnesses refused to disclose the identity of Protameen's customers. Attorney James Li defended the Protameen witnesses (Li Decl. ¶ 2). For example, Emmanuel Balsamides, Sr., the author of the email, testified:

> Q. Okay. Do you recall who that customer was in January 2013 referred to in Exhibit 1004?
>
> A. Do I recall?
>
> Q. Yes. You mentioned a big customer in your email —
>
> A. Yes.
>
> Q. — of December 3rd. Do you recall who that was?
>
> A. Yeah, I think I remember.
>
> *Q. And who was that customer?*
>
> *A. I would rather not say.*
>
> *Q. Are you refusing to answer?*
>
> *A. Yes.*

(Balsamides Dep. at 118–120) (emphasis added).

FRCP 26(b)(1) states (emphasis added):

> *Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including* the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. *For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.* Relevant information need not be admissible at the trial *if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.*

At oral argument, A&C Catalysts stated that it seeks to probe whether Protameen had any motive to cause Raymat to terminate the exclusive supply agreement based on Protameen's negotiations with the unidentified "customer."

The third-party complaint alleged breach of contract claims against Raymat, an intentional interference with contractual relations claim against Protameen, and an unfair competition claim against Raymat and Protameen. The complaint alleged that Protameen was the "largest customer" of A&C Catalysts for Lauroyl Lysine until July 2010, when Protameen

7

"informed A&C that it would no longer be purchasing Lysine from A&C." Thereafter, A&C Catalysts:

> discovered that Raymat, using A&C's confidential business and marketing information, approached Protameen to see Lysine directly to Protameen instead of honoring its contractual relationship with A&C. Consequently, A&C lost its Lysine business with Protameen to Raymat.

(Dkt. No. 26 at ¶¶ 54, 55). In December 2012, Raymat allegedly tried to circumvent the exclusive supply agreement and confidential disclosure agreement by "seeking to directly sell to A&C's largest customer, Protameen" (*id.* ¶ 59). Section 8.6 of the exclusive supply agreement between Raymat and A&C Catalysts stated the "Vendor [Raymat] will not circumvent . . . seek or consummate a Sale with any party for the defined Product within the 'Territory,' without prior written consent of the Customer [A&C Catalysts], except through the Customer." Product is "L-lysine" and territory "shall mean the USA, the United Kingdom and European Union Countries" (Dkt. Nos. 15, 66-3). A&C Catalysts seeks to prove-up these allegations.

Protameen responds that "[w]hile it is true that Protameen was informed of an 'exclusive deal' between [A&C Catalysts] and Raymat in 2011, it was never informed of any particular terms of the deal." The evidentiary support on this point (in this motion), however, is thin. Protameen further argues:

> Although Wolfe also told Balsamides, Sr. that he 'had a contract' with Raymat, Balsamides Sr., who is 80 years old and semi-retired, did not realize that he was referring to an exclusive agreement . . . . he sent Raymat an email stating why they needed a middle man when the price was the issue . . . . The email after all had no effect on Raymat's decision to terminate the Agreement, as the decision had been made in June, six months prior to that email.

(Opp. 5–6). Protameen argues that after it learned from the depositions that A&C Catalysts was selling Lauroyl Lysine to Jeen International, Inc., "a decision was made not to disclose any of Protameen's [Lauroyl Lysine] customers because of the history between Jeen and Protameen" (Opp. 10). In the late 1990s, Emmanuel Balsamides, Sr. and Leonard Perle founded Protameen. The relationship soured and erupted in litigation. *Balsamides v. Protameen Chemicals.*, 160 N.J. 352, 354 (N.J. 1999). Mr. Perle was forced out of Protameen and started Jeen, a competitor (Balsamides, Jr. Decl. ¶¶ 3, 4).

8

1   A&C Catalysts, Protameen, and Raymat, all named parties herein, have entered into a
2   protective order which states: "A Receiving Party may use Protected Material that is disclosed
3   or produced by another Party or by a Non-Party in connection with *this case only for*
4   *prosecuting, defending, or attempting to settle this litigation*" (Dkt. Nos. 42, 43) (emphasis
5   added). A&C Catalysts seeks to discover the customer referenced in an email during the
6   relevant time period, produced by Raymat in this litigation. This order finds that the identity of
7   Protameen's customer referenced in the email, dated December 3, 2012, is relevant to at least
8   A&C Catalysts' claim alleging intentional interference with contractual relations and to the facts
9   and circumstances surrounding Raymat's termination of the exclusive supply agreement.

10  Protameen responds that it is willing to disclose in writing, marked as "HIGHLY
11  CONFIDENTIAL — ATTORNEYS' EYES ONLY," the name and address of the customer
12  referenced in the email, subject to certain conditions (*e.g.*, mark documents referencing the
13  customer's name as "AEO," no subpoenas or lawsuits against the customer, etc.) (Li Decl. Exh.
14  E).

15  Having considered the parties' arguments and papers, A&C Catalysts' motion to compel
16  is **DENIED**. Instead, the Court issues the following interrogatories to Protameen Chemicals, Inc.:

17  1.  State the name(s) and address(es) of the "customer(s)" referenced by Emmanuel
18  Balsamides, Sr. in the email to Raymat Materials, Inc., dated December 3, 2012 (Dkt. No. 67-6).

19  2.  State the name(s) and address(es) of the "competition" referenced by Emmanuel
20  Balsamides, Sr. in the email to Raymat Materials, Inc., dated December 3, 2012 (Dkt. No. 67-6).

21  3.  State all of the terms and conditions of the oral contract between Protameen
22  Chemicals, Inc. and the customer(s) referenced by Emmanuel Balsamides, Sr. in the email to
23  Raymat Materials, Inc., dated December 3, 2012 (Dkt. No. 67-6).

24  4.  List all individuals and entities Protameen Chemicals, Inc. sought to purchase
25  Lauroyl Lysine from in 2012.

26  5.  List all individuals and entities Protameen Chemicals, Inc. sought to purchase
27  Lauroyl Lysine from during the time period January 1, 2013 to March 1, 2013.

9

6. From May 2011 to March 2013, what did Protameen Chemicals, Inc. know about the relationship between Raymat Materials, Inc. and A&C Catalysts, Inc.? Please organize the response chronologically and include knowledge of any contractual relationships, sales arrangements, and terms.

Protameen's response is due by **NOON ON APRIL 29**. The complete response should be verified and signed under oath by appropriate individuals with personal knowledge from Protameen Chemicals, Inc.

\*         \*         \*

A&C Catalysts requests fees and costs associated with their motion to compel. Counsel for A&C Catalysts represented that the parties met-and-conferred on March 21 and March 31. Counsel for Protameen responds that those conferences did not "qualify" because "[i]t was a brief discussion of a topic which was not even a part of the agenda for that meeting" (Opp. 17). At the hearing, this remained a live dispute. It is sad that counsel cannot even agree on whether they met-and-conferred. In any event, this order finds that both sides have misbehaved and A&C Catalysts' overbroad motion to compel was denied in the preceding section of this order. Accordingly, A&C Catalysts' request for leave to file an additional brief on fees and costs for its motion to compel is **DENIED**. No award of fees and expenses is provided for in this order.

### 2. MOTION TO EXTEND SCHEDULE OR SERVE DISCOVERY REQUESTS.

On April 14, after discovery closed in March, A&C Catalysts filed an "administrative motion to extend [the] fact discovery period and motion to enlarge time to file dispositive motions, or alternatively, [a] motion for leave to serve narrowly tailored discovery requests." A&C Catalysts seeks to extend the fact discovery deadline from March 28, 2010, to May 30, 2014, the dispositive motion deadline from April 24, 2014, to June 13, 2014, and the trial date from June 30, 2014, to August 25, 2014. On April 18, Protameen and Raymat filed responses.

A&C Catalysts erroneously styled this as an administrative motion for "miscellaneous administrative matters, not otherwise governed by a federal statute, Federal or local rule or standing order of the assigned judge." *See* Local Rule 7-11. The motion, however, seeks to modify the scheduling order and serve untimely discovery requests — relief governed by the

10

federal rules. Nevertheless, as with administrative motions, this order finds that no reply brief or hearing is needed. Both sides would benefit from the expeditious resolution of this motion so that they can move forward with their trial preparation.

For the reasons stated herein, A&C Catalysts' motion to extend the case schedule or serve untimely discovery requests is **DENIED**. No diligence has been shown to justify a finding of good cause for extending the scheduling order in such a dramatic way. A&C Catalysts' bare excuses are to refer (yet again) to Raymat's improper attorney's-eyes-only designations and the depositions which took place in March 2014. *First,* Raymat's improper designations have little to do with whether A&C Catalysts diligently pursued its own discovery of its claims against Protameen and Raymat. That designations spat centered around whether the client (A&C Catalysts) could view certain portions of discovery documents. Counsel for A&C Catalysts had the documents well in hand. Moreover, the so-called "narrowly tailored discovery requests" A&C Catalysts seeks leave to serve (via this motion) do not show reasonable diligence (Dkt. No. 77-5, 77-8). To the contrary, both sets could have been served well in advance of the March 28 deadline. The proposed untimely discovery requests seek basic information and do not hang on any late-discovered information. Specifically, the requests to Protameen seek documents relating to Raymat and Lauroyl Lysine, including shipping documents. The requests to Raymat seek documents relating to "24 metric tons," Chinese manufacturers, and Lauroyl Lysine. Both sets could have been timely served. A&C Catalysts will not be rewarded for its own procrastination. *Third*, both sides could have noticed their depositions and offered their deponents earlier. No good cause has been shown to extend the case schedule or permit A&C Catalysts to serve these untimely discovery requests. A&C Catalysts' motion is **DENIED**.

**CONCLUSION**

For the reasons stated herein, A&C Catalysts' motion to compel and motion to extend discovery and serve untimely discovery requests are **DENIED**. Protameen's response to the interrogatories ordered herein is due by **NOON ON APRIL 29**. The response should be filed and served. All responses may be designated as "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY," pursuant to the protective order. If inadequate responses are provided, then the Court is inclined to advise the jury of the stonewalling. The May 1 hearing is **VACATED**.

Even though Raymat and Protameen have filed dispositive motions, *no party has any excuse to suspend their trial preparation*. All deadlines, including the motion *in limine* deadlines, remain in place. Even though the deadline for dispositive motions is April 24, no further dispositive motions are invited.

Each party is limited to **THREE MOTIONS *IN LIMINE*** for the final pretrial conference. Any other motions *in limine* or objections can be addressed at trial as witnesses come and documents are offered. Please refer to the undersigned judge's standing order for further trial guidelines.

**IT IS SO ORDERED.**

Dated: April 22, 2014.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE