1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RAYMAT MATERIALS, INC., a
California corporation,

                   Plaintiff,

    v.

A&C CATALYSTS, INC., a New Jersey
corporation,

                   Defendant and Third-Party
                   Plaintiff,

    v.

PROTAMEEN CHEMICALS, INC., a
New Jersey corporation,

                   Third-Party Defendant.

_____/

No. C 13-00567 WHA

**ORDER DENYING
MOTION FOR LEAVE TO FILE
SECOND AMENDED COMPLAINT,
DENYING REQUEST TO AMEND
SCHEDULING ORDER, AND
VACATING HEARING**

**INTRODUCTION**

        In this breach-of-contract action, plaintiff moves — nine months late and two months

before trial — to file a second amended complaint adding three fraud claims.  For the reasons

stated herein, the motion is **DENIED**.  The hearing on May 1 is **VACATED**.

**STATEMENT**

In February 2013, plaintiff Raymat Materials, Inc. filed a five-page complaint alleging breach-of-contract and sought declaratory relief.  Raymat filed a first amended complaint in May 2013 to append the exclusive supply agreement, the underlying contract for the breach by which it had agreed to supply lauroyl lysine to A&C Catalysts, Inc. (Dkt. No. 15).

A May 2013 case management order set a number of deadlines including:  initial disclosures by May 17, 2013, and leave to add any new parties or *pleading amendments by June 28, 2013* (Dkt. No. 16).

Nine months after the deadline for pleading amendments and just two weeks before the close of fact discovery, Raymat moved for leave to file a second amended complaint to add three fraud-related claims — intentional misrepresentation, false promise, and declaratory judgment that the agreement was null and void (Dkt. No. 56).  Raymat amended its motion to request a modification of the scheduling order to allow the amendment shortly after (Dkt. No. 61). Ten days later, Raymat moved for summary judgment (Dkt. No. 64).  Trial is scheduled for June 2014.

*        *        *

Central to the parties' dispute is the exclusive supply agreement and the alleged failure by A&C Catalysts to purchase 24 metric tons of lauroyl lysine per year from Raymat.

In emails, dated October 26–27, 2010, Jim Turner from Raymat stated to John Wolfe from A&C Catalysts:

> John, hope all is well, I know that you haven't heard from either Jibing or I in a while, but I wanted to let you know that we have begun bringing in higher volumes of LL with our new manufacturing capabilities . . . *I would like to quote you and see if we could support your efforts again.*

(Li Decl. Exh. A) (emphasis added).  "LL" is lauroyl lysine.

John Wolfe responded:  "*Please quote me on a usage number of 6,000 lbs a month & growing.  This business for Raymat could start 12/1/10*" (*ibid.*) (emphasis added).  Six-thousand pounds is 2.7 metric tons.

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

Jim Turner responded:  "John, we can offer $46.20Kg, 30 day terms.  Let me know and we can review your volumes and timing" (*ibid.*).

In November 2010, Jim Turner (Raymat) stated in an email:

> John, hope all is well, I left you a message on your mobile . . . We need to talk.  As I've mentioned I have the volume now that we originally talked about . . . Raymat has 2 new ventures that are taking up much of our time.  *We originally fell down on the volume commitment to you and now we would prefer to try and move the volume to a single person that can take 2–3 tons monthly . . . If we can move this volume through you I would be willing to roll back your price to $42.60/kilo for the next 10 tons purchased . . . 30 day terms* . . . I would prefer doing it this way as opposed to marketing the product directly . . . we can talk further commitment as needed.

(Li Decl. Exh. B) (ellipses in original, emphasis added).

In 2011, Raymat and A&C Catalysts entered into an exclusive supply agreement. Exhibit A to the agreement stated:

| | | |
|---|---|---|
| Products | 4/7/2011 | |
| Lysine | $42.40/kg | |
| Purchase Quantities minimums; | 1 MT | |
| Annual Volume Commitment | 24 MT | |

(Li Reply Decl. Exh. D).  MT stands for metric ton.  John Wolfe signed for A&C Catalysts and Jim Turner signed for Raymat.

\*                    \*                    \*

When John Wolfe was deposed in March 2014, he testified as follows:

> Q.  So on October 27, 2010, which is the date of this email, you asked Raymat to give you a quote for the volume of 2.7 metric ton per month and growing, correct?
>
> A.  Yes, I did.
>
> *Q.  Where did you get that volume figure?*
>
> *A.  I pulled it out of the air.*
>
> Q.   So you had no basis to make that statement about the volume of 2.7 metric ton per month?
>
> MR. CHANG:  Objection.  That's not what his -- mischaracterization of his answer.
>
> Q.   You may answer, sir.

3

A.   For me it's standard business practice to go out and throw numbers out and try to get the best pricing I can.

Q.   You say as best as you can.  Is there any basis for that monthly volume of 2.7 metric ton?

A.   Not that I remember.

(Wolfe Dep. at 68–69) (emphasis added).  Six-thousand pounds is 2.7 metric tons.

This order pauses to note that the excerpts from John Wolfe's deposition can be found appended to A&C Catalysts' opposition.  Raymat failed to even append the transcript to its motion.  Raymat argues that "[i]t is sufficient for Counsel to summarize the relevant testimony to inform the court of the essence of the testimony that triggered the need for the proposed amendment" (Reply 5).  This is wrong.  Please append the relevant transcripts or source documents in the future.

In Raymat's four-page motion for leave to file a second amended complaint, Raymat argues that these lines of Wolfe's testimony provide the basis for the new proposed fraud claims. In its reply, Raymat states:  "Right after the deposition, Raymat filed the instant Motion based on Mr. Wolfe's deposition testimony that he pulled the 2.7 MT per month volume out of thin air" (Reply 1).  Raymat's theory is that A&C Catalysts lied to get a good price when it had no intention of honoring a 24 metric ton per year commitment.

**ANALYSIS**

The case management order listed June 28, 2013, as the deadline for filing amendments. After an amendment deadline passes, a scheduling order may be modified only for good cause. *See* FRCP 16.  Our court of appeals has held:

> The pretrial schedule may be modified if it cannot reasonably be met despite the diligence of the party seeking the extension.  If the party seeking the modification was not diligent, the inquiry should end and the motion to modify should not be granted.

*Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (internal citations omitted). If the movant is not diligent, the inquiry ends.  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992).

United States District Court
For the Northern District of California

No diligence has been shown by Raymat. This order finds no good cause for amending the scheduling order to allow Raymat to add in three new claims. Raymat's motion is more than nine months late and fact discovery is currently closed.

Raymat mistakenly focuses on how quickly it moved to amend following the deposition. This does not demonstrate diligence for the real dragging of the feet is Raymat's utter failure to propound any requests for production from *May 2013* (after initial disclosures were exchanged) to *September 2013* (when Raymat served its first set of requests for production) and to wait until *December 2013* to serve its deposition notice on John Wolfe, a key figure in this action.

No decent explanation is provided for this delay. It seems that Raymat waited until after the ADR session concluded to begin propounding discovery requests. Court-ordered mediation does not suspend the discovery schedule. The case management order stated:

> While the Court encourages the parties to engage in settlement discussions, please do not ask for any extensions on the ground of settlement discussions or on the ground that the parties experienced delays in scheduling settlement conferences, mediation, or ENE. The parties should proceed to prepare their cases for trial. No continuance (even if stipulated) shall be granted on the ground of incomplete preparation without competent and detailed declarations setting forth good cause.

(Dkt. No. 16). Raymat should have proceeded expeditiously. Perhaps, had it done so, it would have "discovered" these three new fraud claims at a much earlier date.

Moreover, Raymat blows smoke, contending that the only reason the deposition took place in March 3 was a result of A&C Catalysts inability to hold the deposition on January 22, when it was initially noticed for by Raymat (Reply 1). The record does not reflect stalling by A&C Catalysts and absent continuous efforts to delay, Raymat can hardly claim that an opposing party's inability to comply with an initial notice date set by an adverse party preserves diligence in discovery. In any event, Raymat's failure to be diligent dooms its tardy motion.

The foregoing is sufficient but there is more. These three new fraud claims arise from the same contract signed by John Wolfe and Jim Turner. To bring on three new claims two months before trial based on seven words in a deposition — "I pulled it out of the air" — is nonsensical.

In negotiations such as this where a minimum buy quantity is being negotiated, each side is entitled to negotiate for whatever amount they can get away with. It is, after all, a contract

negotiation and neither side wants to leave "money on the table."  There is nothing inherently wrong with one side or the other bargaining for a higher/lower amount than what they would be willing to accept.  It is okay in a negotiation, therefore, for one side or the other to "pull a number out of the air" as their starting point, or intermediate point, or even end point.  Neither side is required to lay bare its negotiating strategy.  This is America and the other side is free to walk away if they do not like it.

Perhaps a false promise is actionable as a species of fraud but the deposition snippet falls short of suggesting fraud and is consistent with innocent negotiations.  At this very late hour in the case, the snippet is simply not enough to scrap the schedule and to dive back into discovery.

Since the foregoing reasons are sufficient to deny Raymat's motion, this order need not reach the merits of the bad faith, prejudice, FRCP 12(b), and FRCP 9(b) arguments.

## CONCLUSION

For the foregoing reasons, Raymat's motion for leave to file a second amended complaint is **DENIED**.  The request to amend the scheduling order is **DENIED AS MOOT**.  The hearing on May 1 is **VACATED**.

**IT IS SO ORDERED.**

Dated: April 22, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE